## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>ELETSON HOLDINGS INC.[1], et al.,<br>---------------------------------------------<br>Provisional Eletson Holdings Inc.<br><br>*Appellants*<br>-- against –<br><br>Reorganized Eletson Holdings Inc.<br><br><br>*Appellees* | Chapter 11<br><br>1:25-cv-02824-LJL<br>(Related to 23-cv-7331-LJL, 24-cv-05096-LJL, 24-cv-08672-LJL, 25-cv-02789-LJL, 25-cv-02811-LJL, and 25-cv-02895-LJL) |

## <u>APPELLANT'S OPENING MEMORANDUM OF LAW</u>

Michael S. Lazaroff
RIMÔN, P.C.
400 Madison Ave, Suite 11D
New York NY 10017
(646) 738-4151
michael.lazaroff@rimonlaw.com

Anthony C. Acampora
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
anthony.acampora@rimonlaw.com

Louis M. Solomon
Colin Underwood
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
lsolomon@reedsmith.com
cunderwood@reedsmith.com

*Counsel for Provisional Eletson Holdings Inc.*

---

[1] The Court has ordered this footnote to be included in this caption: "Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. On [March 5, 2025], the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on [March 5, 2025], all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119" (Dkt. 1515 ¶ 7).

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In compliance with Rule 8012(b)(1) of the Federal Rules of Bankruptcy Procedure, Eletson Holdings Inc., which in this brief for convenience only is referred to as Provisional Holdings, discloses that it does not have any parent corporations and that the following entities own 10% or more of its stock:

Lassia Investment Company;

Glafkos Trust Company;

Family Unity Trust Company

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF CONTENTS........................................................................................ iii

TABLE OF AUTHORITIES ..................................................................................v

PRELIMINARY STATEMENT ............................................................................1

JURISDICTIONAL STATEMENT ......................................................................2

STATEMENT OF ISSUES AND APPLICABLE STANDARDS OF
    REVIEW ........................................................................................................4

STATEMENT OF THE CASE ..............................................................................7

    A.    The Bankruptcy And Plan Confirmation ................................................7

    B.    The Greek Provisional Order And Subsequent Greek
        Proceedings ...............................................................................................9

    C.    Reorganized Holdings Files Several Sanctions Motions
        That Failed To Provide Provisional Holdings With Proper
        Notice, Sowing Chaos ..........................................................................12

        (i)    The First Sanctions Motion Creates An Original Sin Regarding
            Notice To Appellant................................................................12

        (ii)   Subsequent Motions And Orders Perpetuate The Lack Of
            Notice By Failing To Include Provisional Holdings ...............15

    D.    The Second Circuit Appeal ...................................................................18

SUMMARY OF ARGUMENT ............................................................................19

ARGUMENT ........................................................................................................20

I.    The Court's Imposition Of Sanctions Against Provisional
    Holdings In The March 13 Order Violates Due Process..............................20

    A.    Appellant Was Deprived Of Notice Prior To Being
        Sanctioned Due To A Deliberate Campaign By Appellee..................21

    B.    Appellee's Attacks On Counsel Deprived Appellant Of The
        Opportunity To Be Heard.....................................................................27

II.    The Bankruptcy Court Failed To Specify The Conduct For Which
       Appellant Would be Sanctioned And Inappropriately Imposed
       Joint And Several Liability ............................................................................29

III.   The Bankruptcy Court Abused Its Discretion By Impermissibly
       Applying The Bankruptcy Code And Its Order Extraterritorially
       And In Violation Of International Comity .....................................................33

              (i)     Factors 1-3; 7: Connection of the activity and parties to Greece,
                      and Greece's interest in regulating the activity ........................36

              (ii)    Factors 4-6: Expectation important to the international system
                      that may be undermined............................................................38

              (iii)   Factor 8: Likelihood of conflict between Greek law and Orders
                      ................................................................................................39

       B.     The Bankruptcy Court Improperly Applied Section 1142
              To Exclusively Foreign Conduct............................................................39

IV.    If The Court Is Not Inclined To Grant The Appeal, The Court
       Should Abstain From Reaching the Merits Pending Adjudication
       by the Court of Appeals, Whether Because Jurisdiction Has Been
       Displaced Or In The Exercise Of Discretion, And In All Events
       Stay The Running Of Any Sanctions ............................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A.R.P. v. Trump*,
   145 S.Ct. 1364 (May 16, 2025) ........................................................................22

*AAlpharma Inc. v. Kremers Urban Dev. Co.*,
   2006 WL 3096026 (S.D.N.Y. Oct. 31, 2006)....................................................29

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
   600 U.S. 412 (2023)..........................................................................35, 39, 40, 41

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C
   Antitrust Litig.)*,
   8 F.4th 136 (2d Cir. 2021) ................................................................................38

*ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores,
   Inc.)*,
   582 F.3d 422 (2d Cir. 2009) ...............................................................................5

*Asvesta v. Petroutsas*,
   580 F.3d 1000 (9th Cir. 2009) ..........................................................................31

*Bullard* v. *Blue Hills Bank*,
   575 U.S. 496 (2015)..............................................................................................3

*Cablevision Sys. N.Y.C. Corp. v. Cicero*,
   2000 U.S. Dist. LEXIS 21903 (S.D.N.Y. Aug. 28, 2000)................................31

*Catskill Mts. Chapter of Trout Unlimited, Inc. v. United States EPA*,
   630 F. Supp. 2d 295 (S.D.N.Y. 2009) ..............................................................43

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) .............................................................................44

*Chao v. Russell P. Le Frois Builder, Inc.*,
   291 F.3d 219 (2d Cir. 2002) .............................................................................28

*In re Chateaugay Corp.*,
880 F.2d 1509 (2d Cir. 1989) ..................................................................2

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
837 F.2d 33 (2d Cir. 1987) ....................................................................38

*Cunningham v. Gregory Funding*,
2019 WL 10744868 (S.D.N.Y. Dec. 10, 2019) ........................................2

*Diatek Licensing LLC v. Estrella Media, Inc.*,
2022 WL 5108090 (S.D.N.Y. Oct. 4, 2022) ...........................................42

*Doral Produce Corp. v. Paul Steinberg Assoc.*,
347 F.3d 36 (2d Cir. 2003) .............................................................27, 28

*EEOC v. Arabian Am. Oil Co.*,
499 U.S. 244 (1991), *superseded by statute on other grounds* .........................40

*Elliott v. GM LLC (In re Motors Liquidation Co.)*,
829 F.3d 135 (2d Cir. 2016) ..................................................................22

*Fed'n of Puerto Rican Orgs., Inc. v. Howe*,
157 B.R. 206 (E.D.N.Y. 1993) ...............................................................21

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*,
2012 WL 252139 (S.D.N.Y. Jan. 24, 2012) ...............................43, 44, 45

*Goldstein v. Time Warner N.Y.C. Cable Grp.*,
3 F. Supp. 2d 423 (S.D.N.Y. 1998) .......................................................44

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982).................................................................................42

*Gucci Am. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014) ..................................................................32

*Hilton v. Guyot*,
159 U.S. 113 (1895)................................................................................31

*In re JJE & MM Grp. LLC*,
692 F. Appx. 43 (2d Cir. 2017) ......................................................21, 26

*Joiner v. NHL Enters.*,
   2024 WL 639422 (S.D.N.Y. Feb. 15, 2024) ......................................................44

*Kappel v. Comfort*,
   914 F. Supp. 1056 (S.D.N.Y. 1996) ...................................................................43

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir. 1995) ...................................................................33, 34, 44

*Kiobel v. Royal Dutch Petro. Co.*,
   569 U.S. 108 (2013)............................................................................................41

*Lasala v. Needham & Co.*,
   399 F. Supp. 2d 421 (S.D.N.Y. 2005) ................................................................42

*Lavender v. Manheim's Pa. Auction Servs. (In re Lavender)*,
   399 Fed. Appx. 649 (2d Cir. 2010).......................................................................5

*Linde v. Arab Bank, PLC*,
   706 F.3d 92 (2d Cir. 2013) .................................................................................32

*LTV Steel Co. v. United Mine Workers of Am. (In re Chateaugay
      Corp.)*,
   922 F.2d 86 (2d Cir. 1990) ...................................................................................3

*Mantell v. Chassman*,
   512 F. Appx. 21 (2d Cir. 2013) ..........................................................................27

*Martinez v. Ryan*,
   566 U.S. 1 (2012)................................................................................................28

*Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re
      Maxwell Commun. Corp. plc)*,
   93 F.3d 1036 (2d Cir. 1996) ...............................................................................36

*McCracken v. Verisma Sys.*,
   2018 WL 4233703 (W.D.N.Y. Sept. 6, 2018)..............................................43, 45

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010)............................................................................................41

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)............................................................................................22

*Nakash v. United States Dep't of Justice*,
    708 F. Supp. 1354 (S.D.N.Y. 1988) ...................................................................28

*Next Invs., LLC v. Bank of China*,
    12 F.4th 119 (2d Cir. 2021) ........................................................................31, 36

*Nike, Inc. v. Wu*,
    349 F. Supp. 3d 310 (S.D.N.Y. 2018) ...............................................................32

*Pal Fam. Tr. v. Ticor Title Ins.*,
    490 B.R. 480 (S.D.N.Y. 2013) .............................................................................3

*Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*,
    101 F.3d 882 (2d Cir. 1996) .................................................................................3

*Perkins Coie LLP v. United States Dep't of Justice*,
    2025 WL 1276857 (D.D.C. May 2, 2025)..........................................................28

*Phelan v. Torres*,
    2005 WL 4655382 (E.D.N.Y. Sept. 20, 2005) ...................................................21

*Pride v. Zimmer, Inc. (In re Zimmer M/L Taper Hip Prosthesis)*,
    2021 WL 5963392 (S.D.N.Y. Dec. 16, 2021) ....................................................42

*In re Quigley Co.*,
    676 F.3d 45 (2d Cir. 2012) ...................................................................................3

*R2 Invs., LDC v. Charter Communs., Inc. (In re Charter
Communications), Inc.*,
    691 F.3d 476 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 2021 (2013).......................5

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
    589 U.S. 35 (2020)................................................................................................3

*Sacher v. United States*,
    343 U.S. 1 (1952)................................................................................................28

*Schlaifer Nance & Co. v. Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999) ...............................................................................27

*Solow v. Kalikow (In re Kalikow) ("Kalikow")*,
    602 F.3d 82 (2d Cir. 2010) ...........................................................................23, 30

*Sterling Nat'l Bank v. A-1 Hotels Int'l*,
  2004 WL 1418201 (S.D.N.Y. June 23, 2004) .................................................... 21

*Taggart v. Lorenzen*,
  139 S. Ct. 1795 (2019) ...................................................................................... 34

*U.S. Nat'l Ass'n v. Lehman Bros. Holdings (In re Lehman Bros.
  Holdings Inc.)*,
  566 B.R. 353 (S.D.N.Y. 2017) ........................................................................... 3

*United States v. Int'l Bhd. of Teamsters*,
  948 F.2d 1338 (2d Cir. 1991) ............................................................................ 30

*Usoyan v. Republic of Turk.*,
  6 F.4th 31 (D.C. Cir. 2021) ......................................................................... 35, 39

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
  825 F.2d 709 (2d Cir. 1987) .............................................................................. 39

*WesternGeco LLC v. ION Geophysical Corp.*,
  585 U.S. 407 (2018) ......................................................................................... 41

*Worms v. Rozhkov (In re Markus)*,
  78 F.4th 554 (2d Cir. 2023) .......................................................................... 5, 30

**Statutes**

11 U.S.C. § 1142 ..................................................................................... 40, 41

11 U.S.C. § 1505 ........................................................................................... 40

28 U.S.C. § 157 ............................................................................................... 2

28 U.S.C. §158 ........................................................................................... 2, 3

28 U.S.C. § 1334 ............................................................................................. 2

**Rules**

Fed. R. of Bankr. P. 8013 ................................................................................. 5

**Other Authorities**

Restatement (Third) of Foreign Relations Law § 403 ......................................32, 36

UNCITRAL *Model Law on Cross-Border Insolvency with Guide to
     Enactm*ent, Art. 17,
     https://uncitral.un.org/sites/uncitral.un.org/files/media-
     documents/uncitral/en/insolvency-e.pdf...............................................................7

## **PRELIMINARY STATEMENT**

On June 6, 2025, a Court of First Instance in Piraeus appears to have issued a decision that is the subject of a letter to this Court from counsel for Reorganized Holdings (Dkt. 14). That letter acknowledges that the attachment to the letter is a draft. Nor is the translation certified. We have been further advised that management of Provisional Holdings is currently taking advice from Greek counsel on the effect of that decision, but currently takes the position, supported by Greek counsel's opinion, and has advised us, that at most the decision affects the composition of the Board of Directors of Provisional Holdings and does not alter Greek law. Based on that law, as has been advised to us, Provisional Holdings' position is that the Petitioning Creditors' Plan of Reorganization and Confirmation Order cannot become effective unless and until they are recognized by the Greek court and that as a result Provisional Holdings is legally entitled and bound to prosecute this appeal. We are also advised that the draft Greek order speaks of a time after sanctions were imposed by the Bankruptcy Court and hence would not affect this appeal. Given that Appellant's brief is due today, Provisional Holdings submits this brief based on advice from its Greek counsel that it is still entitled to assert its legal rights in this proceeding. Provisional Holdings seeks an extension of the deadline to file this brief of one week from the date a final order is issued. Good cause for such an extension is shown by the need to consider the order, to

ensure that the client receives Greek legal advice, the undersigned counsel can then determine what actions, if any, it may or must take, and so that this Court is not burdened with the inefficiency of considering papers that may be significantly changed or rendered moot. Nonetheless, because this Court denied Provisional Holdings application for an extension to file this brief, we are submitting it with the extension request.

## JURISDICTIONAL STATEMENT

The United States Bankruptcy Court for the Southern District of New York had jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This case arises under Title 11 of the United States Code, and the Bankruptcy Court has original jurisdiction over all cases under Title 11. This matter is a core proceeding under 28 U.S.C. § 157(b)(2), as it involves "matters concerning the administration of the estate." The Bankruptcy Court is authorized to hear and determine all core proceedings arising under Title 11, or arising in a case under Title 11, and to enter appropriate orders and judgments.

In bankruptcy appeals, a district court has jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. §158(a)(1). *See generally In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir. 1989); *Cunningham v. Gregory Funding*, 2019 WL 10744868 (S.D.N.Y. Dec. 10, 2019), *report and*

*recommendation adopted*, 2020 WL 5774207 (S.D.N.Y. Sept. 27, 2020); *Pal Fam. Tr. v. Ticor Title Ins.*, 490 B.R. 480, 482 (S.D.N.Y. 2013).

The "standard for finality in bankruptcy matters is more flexible than in ordinary civil litigation, because bankruptcy proceedings often continue for long periods of time and discrete claims are resolved from time to time over the course of the bankruptcy proceeding." *Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.*), 101 F.3d 882, 885 (2d Cir. 1996); *see also Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020); *Bullard* v. *Blue Hills Bank*, 575 U.S. 496, 501 (2015). "Orders in bankruptcy cases may be immediately appealed if they resolve discrete disputes within the larger case." *LTV Steel Co. v. United Mine Workers of Am. (In re Chateaugay Corp.*), 922 F.2d 86, 90 (2d Cir. 1990); s*ee also In re Quigley Co.*, 676 F.3d 45, 50-51 (2d Cir. 2012); *U.S. Nat'l Ass'n v. Lehman Bros. Holdings (In re Lehman Bros. Holdings Inc.)*, 566 B.R. 353, 359 (S.D.N.Y. 2017).

The District Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a)(1) because the Bankruptcy Court entered the March 12 and 13, 2025 decision and order of the United States Bankruptcy Court for the Southern District of New York (Mastando, J.) (the "March 13 Order") (A4346-4453)[2] as a final

---

[2] All citations to "A_" refer to pages annexed to the Appellant's Appendix, submitted herewith.

order imposing "coercive monetary sanctions in the amount of $5,000 per party per day against (i) each of the Former Majority Shareholders, (ii) each of the Former Minority Shareholders, (iii) Purported Provisional Holdings, (iv) the Purported Provisional Board, and (v) Vasilis Hadjieleftheriadis" (the "Sanctioned Parties") which would continue "until such date the parties comply with the Plan, the Confirmation Order, the Consummation Order, and this Order" (A4451).

The March 13 Order was entered on March 12 and 13, 2025, a notice of appeal was filed on March 24, 2025 in compliance with Bankruptcy Rule 8002, and the designation of the record on appeal and statement of the issues to be presented were filed with the bankruptcy clerk on April 7, 2025 in compliance with Bankruptcy Rule 8009(a). The Notice of Transmittal of Record of Appeal was filed with this Court on May 9, 2025, directing that the Appellant's Brief is due on or before June 9, 2025.

## STATEMENT OF ISSUES AND APPLICABLE STANDARDS OF REVIEW

Appellant recognizes that this Court has made certain rulings on issues presented by this appeal that are currently on appeal to the Second Circuit. Appellant believes that the Second Circuit's consideration of these issues displaces the Bankruptcy Court's and this Court's consideration of the same issues. Appellant respectfully submits this brief to preserve its position with respect to these issues.

The District Court, in hearing appeals from the Bankruptcy Court, generally reviews questions of law de novo and questions of fact under the "clearly erroneous" standard. *See* Fed. R. of Bankr. P. 8013; *R2 Invs., LDC v. Charter Communs., Inc. (In re Charter Communications), Inc.*, 691 F.3d 476, 483 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 2021 (2013); *Lavender v. Manheim's Pa. Auction Servs. (In re Lavender)*, 399 Fed. Appx. 649, 651 (2d Cir. 2010); *ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422, 426 (2d Cir. 2009). However, "a bankruptcy court's award of sanctions is reviewed for abuse of discretion." *Worms v. Rozhkov (In re Markus)*, 78 F.4th 554, 563 (2d Cir. 2023). Still, "[i]f a bankruptcy court lacks the authority to impose a particular sanction, the imposition of such a sanction constitutes an error of law, which is 'necessarily' an abuse of discretion, and, therefore, demands reversal." *Id.*

1.    Whether it was error for the Bankruptcy Court to grant the "Emergency Motion of Eletson Holdings Inc. for Entry of a Further Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization" filed on February 19, 2025 (Dkt. No. 1459), and issue the March 13 Order.

2.    Whether the Bankruptcy Court, in issuing the March 13 Order, exceeded its jurisdiction.

3.      Whether the Bankruptcy Court, in issuing the March 13 Order, improperly sanctioned the Appellant to coerce Appellant to take actions beyond the scope permitted by Section 1142(b) of the Bankruptcy Code.

4.      Whether it was error for the Bankruptcy Court to issue sanctions against the Appellant in the March 13 Order.

5.      Whether the Bankruptcy Court, in issuing the March 13 Order, improperly sanctioned the Appellant to coerce Appellant to act in a manner contrary to "applicable law" or against rules of international comity.

6.      Whether the Bankruptcy Court, in issuing the March 13 Order, improperly grouped Appellant with other entities or persons it was also sanctioning without due consideration of the different powers and rights of the differing entities or persons.

## STATEMENT OF THE CASE

*A.  The Bankruptcy And Plan Confirmation*

On March 7, 2023, the Petitioning Creditors filed involuntary Chapter 7 bankruptcy petitions against Eletson Holdings, Inc. ("Holdings")—a Liberian entity with its principal place of business in Greece—Eletson Finance (US) LLC, and Agathonissos Finance LLC (A360). On September 6, 2023, Holdings stipulated to the conversion of the Chapter 7 cases to voluntary Chapter 11 cases (*id.*).

From the start, the Petitioning Creditors in the bankruptcy well understood that two of the three debtors—including Holdings—were foreign entities, requiring restructuring proceedings to occur in both the U.S. and in foreign jurisdictions (A198 at § VIII.A.3). And, under Greek law, which adopts the United Nations Commission on International Trade Law (UNCITRAL) Model Law on Cross-Border Insolvency, any bankruptcy plan for Holdings, whose Center of Main Interest is in Greece, must be recognized in Greece before it becomes effective. *See* UNCITRAL *Model Law on Cross-Border Insolvency with Guide to Enactm*ent, Art. 17, https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/insolvency-e.pdf; A471 at 31:6-8) (Official Committee of Unsecured Creditors recognizing the applicability of UNCITRAL.).

The need for such foreign recognition was explicitly reflected in the bankruptcy documents. For example, Petitioning Creditors' proposed plan made specific provision for compliance with foreign law and the need for later foreign recognition proceedings (A4605 at § 5.2(b) (acknowledging satisfaction of "the applicable requirements of applicable law" was required to implement the Plan"); A4606 at § 5.4 ("all . . . stock (*where permitted by applicable law*) . . . shall be cancelled.") (emphasis added); A4604-05 at § V.5.1; A4609 at § V.5.9; A4622 at § IX.9.1; A4628 at §§ XI.11.2, XI.11.3 (similar)). Their binding Disclosure Statement likewise provided that the Petitioning Creditors would "make every effort to ensure that any Confirmation Order entered by the Bankruptcy Court and the steps taken pursuant to the Confirmation Order to implement the Plan are recognized and are effective *in all applicable jurisdictions*," and acknowledged the risk that "a foreign court may refuse to recognize the effect of the Confirmation Order" (A198 at § VIII.A.3 (emphasis added)).

On October 25, 2024, the Court issued a decision confirming the Petitioning Creditors' Chapter 11 plan of reorganization (the "Plan") (A336-440) (the "Plan Confirmation Decision"), and, on November 4, 2024, entered the Confirmation Order (A4719-4748). Appellant appealed the Confirmation Order on November 7, 2024 (*In re Eletson Holdings,* Case No. 1:24-cv-08672 ("DC Plan Appeal"), Dkt. 1).

### B. *The Greek Provisional Order And Subsequent Greek Proceedings*

Since its principal place of business and center of main interests are in Greece, Holdings is, and has always been, under the jurisdiction of Greek law (A2083 ¶ 8). On November 11, 2024, following the resignation of four of Holdings' directors, two of Holdings' minority shareholders submitted an application to the First Instance Court of Piraeus in Greece requesting the appointment of provisional management of Holdings to ensure the company could continue to function and operate (A2087 ¶ 20; A5088-5138).

On November 12, 2024, the Piraeus First Instance Court issued an order (the "Greek Order") appointing provisional board members with authority to manage the company until the hearing of the respective application on February 4, 2025 (A1138-40). The purpose of the Greek Order was to ensure that Holdings could continue to operate while the Petitioning Creditors sought judicial recognition and enforcement of the Plan and Confirmation in Liberia and Greece, as they had promised to do (*see* A198 at § VIII.A.3).

On February 3, 2025, Appellee filed an application for the recognition of the Confirmation Order before the Court of First Instance in Athens and asked the court to immediately issue a provisional order appointing Adam Spears as the manager of Reorganized Holdings until a judgment is issued to such application (A3151-76). In Appellee's recognition application in Greece, Appellee asserted to

the Greek court that Holdings' "true seat, and beyond that, the center of its main interests, *is located in the State of New York*, (One Pennsylvania Plaza Suite 3335, New York, NY 10199" (A3152) (emphasis added). Appellee's petition further (and falsely) stated that "[a]s far as Greece is concerned . . . [Holdings] does not maintain its seat there, does maintain personnel, infrastructure, property, and does not maintain banks accounts there (*id.*; *see also* A3163 ("The Center of Main Interests of [Holdings] was, *at the time the insolvency proceedings initiated, and remains to this day, the U.S.A.*" and "alleged detection in Greece . . . is a late myth . . . [and] in fact unfounded in reality.") (emphasis added)). Further, the recognition application was filed under the name "Eletson Holdings Inc" "legally represented by Mr. Adam Spears" (A3152).

On February 3, 2025—the same day—Appellant filed a joinder, which advised the Greek court that Holdings' Center of Main Interests ("COMI") was, and always has been, in Piraeus, Greece and, further, that the address listed by Appellee belonged to Appellee's own U.S. counsel—then the law firm of Togut Segal & Segal (A3223). The response noted that, under Greek law, "only the foreign administrator (which cannot be considered to be the bankruptcy or reorganized company itself) may request the recognition" of the Confirmation Order, further stating that the application should be submitted by Adam Spears and

not on behalf of Holdings, where the Confirmation Order has yet to be recognized (A3222).

Finally, the joinder stated that, pursuant to the UNCITRAL Model Law, as enacted in Greece in law 3858/2007, a condition for the recognition of the Confirmation Order in Greece is that insolvency proceedings must have taken place before a court of the COMI of the company, in this case Greece (A3224) ("the reorganization proceedings followed in the USA cannot be recognized in Greece, since it is not a 'foreign main procedure' as it was not conducted in a State where the debtor has the center of his main interests."). Accordingly, because Holdings (at least) had and has its center of main interest in Greece, a Greek court must approve the reorganization process for it to have any effect in Greece or in any E.U. country (A2803-84 ¶¶ 8, 12).

On February 5, 2025, after an adversary proceeding, a three-judge panel in Athens, Greece declined to recognize the reorganization of Holdings and declined to recognize Mr. Spears as Reorganized Holdings' representative in Greece (A2114 ¶¶ 10-11; A2115-47).

C. *Reorganized Holdings Files Several Sanctions Motions That Failed To Provide Provisional Holdings With Proper Notice, Sowing Chaos*

    (i)    <u>The First Sanctions Motion Creates An Original Sin Regarding Notice To Appellant</u>

On November 25, 2024, Appellee moved for an order pursuant to Section 105 of the United States Code ("<u>Bankruptcy Code</u>") and Federal Rule of Bankruptcy Procedure ("<u>Bankruptcy Rule</u>") 9020 seeking injunctive relief and sanctions (the "<u>First Sanctions Motion</u>") against a range of entities and individuals, referred to as the "Violating Parties," and defined as:

> Reorganized Holdings' (a) existing person of record at the address of record (the "AOR") currently on file with LISCR (defined below) and (b) former shareholders (the "Former Shareholders"), officers and directors (together, the "Former D&Os"), and counsel for Former Debtors, including Reed Smith LLP ("Reed Smith"), as well as counsel for the Former D&Os at Daniolos Law Firm ("Former D&Os Counsel" and, together with the AOR, the Former Shareholders, the Former D&Os, and Reed Smith."

(A502). Appellant was not named as a respondent (*id.*).

On December 16, 2024, the Bankruptcy Court heard argument on the First Sanctions Motion, during which Appellant's counsel called to the court's attention that Appellant was not named as a respondent. (A1442 at 58:6-7 ("By the way, Holdings, Your Honor, wasn't even a respondent on the motion.")).

On December 27, 2024, after the hearing and without prior leave of Court, Appellee filed a revised proposed order (the "<u>Revised Proposed Order</u>") (A1327-

30)). Notwithstanding that Appellee had disclaimed the existence of Provisional Holdings at the December 16, 2024 hearing, (A1432 at 48:20-21) ("There is no Eletson Holdings besides Reorganized Holdings . . . There is no other Holdings out there somewhere in some fictional world."), Appellee sought relief against Appellant without having served or given due notice to Appellant (A1327-30). Specifically, Paragraph 1 of the Revised Proposed Order sought to add Appellant to the order: "Confirmation and Plan are binding on the *Former Debtors and the Violating Parties*" (A1328 at ¶ 1). Meanwhile, Appellee was continuing to argue in other fora that Appellant did not exist. *See* S.D.N.Y. 1:24-cv-08672, ECF No. 15 ("There is only EHI [Eletson Holdings Inc.] with one board.")).

Following objections by Appellant's counsel (A1337-40), on January 2, 2025, Appellee filed a letter again modifying the relief it requested (A1341-84). Importantly, neither the Revised Proposed Order, nor the January 2, 2025 letter redefined "Violating Parties" to include Appellant (A1327; A1341). In fact, the Revised Proposed Order distinctly referred to it as separate from the "Violating Parties" (A1327).

At the January 6, 2025 evidentiary hearing, in response to the court's inquiries about who Appellee sought relief against, Appellee confirmed that Appellant was not a respondent on the First Sanctions Motion: "The they, Your Honor, is the former shareholders, the former officers and directors who are clearly

covered by the jurisdiction of this Court . . . we tried to just keep it a little bit more generic, saying the former shareholders, the former officers and directors." (A1722 at 11:19-12:12).

Following the hearing, Appellee submitted proposed findings of fact and conclusions of law (A1562-612). In its proposed findings, Appellee stated that the First Sanctions Motion sought:

> relief against Reorganized Holdings' (a) existing person of record at the address of record (the "AOR") currently on file with the Liberian International Ship & Corporate Registry ("LISCR") and (b) the Former Shareholders (defined below), the Former Board (defined below), the Former Officers (defined below), Reed Smith LLP ("Reed Smith"), and the Daniolos Law Firm ("Daniolos"), in its capacity as counsel to any of the foregoing (collectively, the "Violating Parties").

(A1565). Again, Appellant was not included in the definition of "Violating Parties."

On January 29, 2025, the Court issued an *Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization* (the "January 29 Order") (A1931-92). The January 29 Order was entered against the "Ordered Parties," defined as:

> Holdings' (a) existing person of record at the address of record (the "AOR") currently on file with the Liberian International Ship & Corporate Registry ("LISCR") and (b) former shareholders3 (the "Former Shareholders"), officers and directors (together, the "Former D&Os"), and counsel, including Reed Smith LLP ("Reed Smith"),

> as well as counsel for the Former D&Os at Daniolos Law
> Firm ("Former D&Os Counsel" and, together with the
> AOR, the Former Shareholders, the Former D&Os, and
> Reed Smith,"

(A1931-32).

The January 29 Order also included directives related to Appellant as

distinct from the Ordered Parties:

> The **Debtors** and the Related Parties, including without
> limitation, the Ordered Parties, are authorized, required,
> and directed to take all steps reasonably necessary as
> requested by Holdings to unconditionally support the
> effectuation, implementation, and consummation of the
> Plan, including, but not limited to, by no later than seven
> (7) days from the date of service of this Order in
> accordance with applicable law (the "Compliance
> Deadline"), taking all steps reasonably necessary to
> update or amend (a) Holdings' AOR to reflect that Adam
> Spears is Holdings' AOR and (b) Holdings' corporate
> governance documents on file with LISCR as directed by
> Holdings.

(A1933 at ¶ 2) (emphasis added). Appellant appealed the January 29 Order.

Appellee filed a Motion to Dismiss that appeal on the basis that "'Provisional

Eletson Holdings' does not exist," and "has no standing to appeal the [January 29

Order]" (*In re Eletson Holdings Inc.,* Case No. 1:25-1312, Dkt. 6 at 11).

      (ii)   <u>Subsequent Motions And Orders Perpetuate The Lack Of
Notice By Failing To Include Provisional Holdings</u>

On February 6, 2025, Reorganized Holdings again moved for sanctions

against the Ordered Parties (the "<u>Second Sanctions Motion</u>") on the grounds that

the Ordered Parties defined in the January 29 Order failed to cause the AOR and

Holdings' corporate governance documents to be updated (*see* A2156 at fn. 2; ¶¶ 1-2; A2158-65). On February 20, 2025, the Court issued its decision on the Second Sanctions Motion, requiring specifically identified parties—which, again, ***did not include Provisional Holdings***—to certify that they have taken certain steps to assist with implementing the Plan and Confirmation Order (A3792-94 at 105:10-107:12).

On February 27, 2025, the Court entered the Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization and Imposing Sanctions on Certain Parties (the "February 27 Order") (A3611-3821). The February 27 Order issued sanctions of $1,000 per day against "the purported Provisional Board, Vasilis Hadjieleftheriadis, and the Former Majority Shareholders" and "the AOR" until those parties undertook certain actions relating to updating the AOR and corporate governance documents of Holdings (A3620 at ¶¶ 1-2). The February 27 Order was issued after Appellee sent an *ex parte* communication including a proposed order to the Court, failing to copy any respondent on the Second Sanctions Motion (A3985).

On February 19, 2025, Appellee again moved for sanctions against the Ordered Parties defined in the January 29 Order (the "Third Sanctions Motion"), seeking both monetary sanctions and injunctions for "failing to withdraw their oppositions to the judicial recognition of the Confirmation Order by Liberian and

Greek courts" (A2804 at fn. 2; ¶¶ 1- 2; A2891 at ¶ 39). ***Provisional Holdings was not named as a respondent*** (*see id.*).

On March 3, 2025, Appellee filed a revised proposed order in connection with the Third Sanctions Motion, requesting that specifically identified parties—referred to as the "Violating Parties," ***which again did not include Provisional Holdings***—be held in contempt and directing the Violating Parties to "withdraw any and all filings that oppose or undermine in any way the judicial recognition of the Confirmation Order, including, without limitation, filings in the Liberian Proceedings and the Greek Proceedings set forth on Exhibit 1" (A3827 at ¶2, A). Reed Smith, as a defined "Ordered Party," opposed Third Sanctions Motion on its own behalf on March 4, 2025 (A3838-4341).

On March 12, 2025, notwithstanding the fact that neither the Third Sanctions Motion, nor any of the prior sanctions motions giving rise to the court's contempt orders were brought against Appellant, the court issued an oral ruling, finding "the following parties . . . in contempt for violating the Chapter 11 plan, the [C]onfirmation [O]rder and the January 29th order": "the former minority shareholders, the former majority shareholders, ***purported Eletson Holdings***, the purported provisional board, and Vassilis Hadjieleftheriadis" (A4427 at 79:17-23) (emphasis added). The following day, on March 13, 2025, the Court memorialized

its decision *Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization* (A4448-53).

On March 23, 2025, Appellant filed a Notice of Appeal of the March 13 Order (*see* A4454-570). Appellant filed the Statement of Issues to be Presented on April 7, 2025 (Dkt. 4).

### D. The Second Circuit Appeal

On December 30, 2024 (DC Plan Appeal, Dkt. 19 and 20) (the "December 30 Order"), the District Court granted Reorganized Holding' Stipulation of Dismissal of Provisional Holdings' appeal of the Plan and Confirmation Order and displaced Reed Smith as counsel (DC Plan Appeal, Dkt. 9). On January 16, 2025, Provisional Holdings filed a notice of appeal of the December 30 Order (DC Plan Appeal, Dkt. 24). On January 17, 2025, the Second Circuit docketed the appeal (*In re Eletson Holdings,* Case No: 1:25-0176 ("Dismissal Appeal"), Dkt. 8). On January 20, 2025, Reorganized Holdings filed a motion to strike Provisional Holdings' notice of appeal of the December 30 Order ("Motion to Strike") (DC Plan Appeal, Dkt. 27). It also filed a letter in the Second Circuit requesting that the Court refrain from taking any action on the appeal (Dismissal Appeal, Dkt. 6).

On January 23, 2025, the Second Circuit issued an Order staying the appeal on the ground that "[t]he district judge has indicated that he 'will consider' both the underlying stipulation of dismissal that is challenged in the notice of appeal and

the pending motion to strike" and ordered that "[w]ithin 14 days of the district court's action, Mr. Lazaroff [of Rimon] and Solomon [of Reed Smith] and Ms. Furey [of Goulston], separately by letter, shall advise the Court regarding the status of the appeal" (Dismissal Appeal, Dkt. 9).

Following briefing and oral argument before the District Court—the heart of which centered on the issue of whether Provisional Holdings or Reorganized Holdings controlled Holdings—on February 14, 2025, the District Court issued an indicative ruling on the Motion to Strike (DC Plan Appeal, Dkt. 66).

After the District Court's indicative ruling on the Motion to Strike, Provisional Holdings submitted its letter regarding the status of the appeal. (Dismissal Appeal, Dkt. 14). Reorganized Holdings filed a motion to dismiss, which Appellant has opposed. In the appeal, the Second Circuit will consider (1) who controls Holdings (*see* Dismissal Appeal, Dkt. 30.1 at 13-15); and (2) whether the Plan and Confirmation Order must be recognized under foreign law in order to become effective (*see* Dismissal Appeal, Dkt. 30.1 at 19-23). A resolution of those issues on the merits will necessarily affect the Court's rulings here.

## SUMMARY OF ARGUMENT

With the greatest respect to the Bankruptcy Court, Appellant appeals from the March 13 Order, which was entered against Appellant without the mandatory notice and opportunity to be heard afforded under principles of Due Process.

Moreover, the March 13 Order created new and affirmative obligations on the parties subject to that order, including Provisional Holdings, and compelled those parties to take actions—or refrain from even speaking—in proceedings outside of the U.S. in violation of the principles of international comity. The March 13 Order thus seeks to override legitimate rights afforded to parties based on the laws in those jurisdictions.

These issues, which have not yet been addressed by the appellate courts, will have and have had a significant impact on Provisional Holdings (and the other respondents) both here and around the world and implicate serious issues of international comity and limits on extraterritoriality. To the extent the Court is inclined not to grant this appeal, it should, at the very least, allow the issues to be addressed by the Second Circuit before issuing a ruling.

## ARGUMENT

I.   **The Court's Imposition Of Sanctions Against Provisional Holdings In The March 13 Order Violates Due Process**

The March 13 Order imposed sanctions on Appellant pursuant to Bankruptcy Rule 9020 and Section 105 of title 11 of the Bankruptcy Code. "In considering whether sanctions should be imposed upon a party or its attorney during the course of litigation, the courts bear a heavy responsibility and should proceed with caution." *Phelan v. Torres*, 2005 WL 4655382, at *16 (E.D.N.Y. Sept. 20, 2005) (internal quotations omitted). Thus, the "Second Circuit has

established a number of procedural safeguards to ensure that sanctions are imposed only in appropriate circumstances." *Id.* at 17. Those procedural safeguards mandate that "[b]efore imposing sanctions on a person charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard." *Sterling Nat'l Bank v. A-1 Hotels Int'l*, 2004 WL 1418201, at *2 (S.D.N.Y. June 23, 2004).

Bankruptcy Rule 9020, as applied through Bankruptcy Rule 9014, codifies the requirement for "[r]easonable notice and an opportunity to be heard." Fed. R. Bank. P. 9014. *see also Fed'n of Puerto Rican Orgs., Inc. v. Howe*, 157 B.R. 206, 212 (E.D.N.Y. 1993). Similarly, the Second Circuit has held that a court seeking to sanction a party pursuant to its inherent powers under section 105 may only do so, "after notice and hearing." *In re JJE & MM Grp. LLC*, 692 F. Appx. 43, 45 (2d Cir. 2017). Here, Appellant was afforded neither.

### A. *Appellant Was Deprived Of Notice Prior To Being Sanctioned Due To A Deliberate Campaign By Appellee*

To comport with due process, "notice must be of such nature as reasonably to convey the required information." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The touchstone of notice is that it is, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829

F.3d 135, 158 (2d Cir. 2016) (citing *Mullane*, 339 U.S. at 314); *see also A.A.R.P. v. Trump*, 145 S.Ct. 1364, 1367 (May 16, 2025) (citing same). When all the circumstances are considered here, Appellant was deprived of proper notice.

Since filing its First Sanctions Motion—which the Third Sanctions Motion incorporates by reference—Appellee actively sought to deprive Appellant of notice in three principal ways:

1. by deliberately omitting Appellant from its papers and its definition of "Violating Parties" (*see* A502; A1565, (defining "Violating Parties" and failing to include Appellant)) or "Ordered Parties," (*see* A2156; A2804; A3825) (defining "Ordered Parties" as those defined in the January 29 Order, which did not include Appellant)) and disclaiming that Appellant was a respondent during argument (*e.g.,* A1722 at 11:19-12:12 ("The they, Your Honor, is the former shareholders, the former officers and directors who are clearly covered by the jurisdiction of this Court . . . we tried to just keep it a little bit more generic, saying the former shareholders, the former officers and directors.");

2. by persistently changing the nature of the relief and the parties against whom relief was sought, sometimes *after* the court had already heard argument (*see, e.g.,* A1327; A3833-34 (redefining "Violating Parties" to include foreign law firms and to add table of proceedings sought to be enjoined)); and

3. by insisting Appellant was not a real entity (and thus would not even be capable of being sanctioned) (*see e.g.,* A1432 at 48:17-21("[t]here is no Eletson Holdings besides Reorganized Holdings . . . There is no other Holdings out there somewhere in some fictional world.") A1753 at 42:9-16 ("The plan makes it explicitly clear that this other holdings doesn't exist. There are not two holdings . . . the provisional holdings . . . that's a fictional entity"); A3489 at 13:14-17 (counsel for reorganized holdings arguing that it is a "[p]lain misreading of the

- 22 -

plan of confirmation" to say that "[t]hat there exist two Eletson Holdings."); A2164 at ¶ 25("It should also be noted that Reed Smith filed the appeal and motion to stay on behalf of 'Provisional Holdings' after this Court held that Provisional Holdings does not exist.")).

These efforts had a cascading effect resulting in the Appellant being excluded from the January 29 Order and the February 27 Order, which formed the basis for the sanctions imposed in the March 13 Order (A4450) ("[The Violating Parties] are in contempt of Court for ongoing violations of the Confirmation Order and the [January 29 Order]").

Although the Second Circuit has held that a party's failure to specifically name an alleged contemnor does not preclude a finding that the contemnor received notice, *Solow v. Kalikow (In re Kalikow) ("Kalikow")*, 602 F.3d 82, 92 (2d Cir. 2010), that is not the circumstance here. Appellee's "failure" to name Appellant was not an oversight, but a deliberate strategy. And Appellant's counsel raised these underhanded tactics with Appellee and the Bankruptcy Court repeatedly. In its objection to the First Sanctions Motion, Appellant's counsel— while defending only itself—specifically noted that the motion contained unidentified parties (A954-55 at ¶¶ 10-11). Then, on December 16, 2024, during argument on the First Sanctions Motion, Appellant's counsel again called to the court's attention that Appellant was not named as a respondent. (A1442 at 58:4-7("Reed Smith is here, and several shareholders are here. Nobody else is here on

this motion. By the way, Holdings, Your Honor, wasn't even a respondent on the motion.")). During the evidentiary hearing on January 6, 2025, Appellant's counsel again brought the procedural deficiencies and lack of clarity to the court's attention:

> I do think that there is a fundamental due process issue now before Your Honor. Late Thursday, the movants, on a motion for sanctions, **which was limited to past conduct, and the past conduct of Reed Smith, possibly shareholders, but it's not clear from movants**—withdrew a part of their motion that had to do with conduct.

> So they want to come to Your Honor today, not talk about any of the past conduct, and talk about whatever they want to. But in the context of a motion for sanctions, where Reed Smith is here, that's improper. There is no basis for that. I think the due process problem is exacerbated by the fact that they not only withdrew the motion in so far as conduct—prior, past conduct is concerned, but they also proposed a new order, which had a lot of new stuff in it, which we haven't had a chance to react to.

> I think there are some serious legal issues that Your Honor has to grapple with. I don't think we begin to be in a position where Your Honor can do that, since we haven't briefed them, they haven't briefed them, and what they did brief, they've withdrawn. **And we don't have anybody else here besides Reed Smith and possibly the shareholders.**

(A1719-20 at 8:10-9:6) (emphasis added).

Then, when Appellee sought to circumvent the notice requirement in the Second Sanctions Motion, Appellant's counsel *again* called it to the court's attention in its own objection (*see* A2389 at ¶ 40 ("Movant did not serve

Provisional Holdings and did not name it as a respondent on this motion. There is no warrant for a response from Provisional Holdings and absolutely no basis consistent with Due Process for imposing any sanction on Provisional Holdings.")), and at the hearing on the motion (A3498 at 22:21-25 ("The reason that there is no other party we represent who is here is twofold. The first is that our client, Provisional Holdings, is not a respondent on the motion. They weren't named on this motion that brings us here today. They weren't therefore served because they weren't named."); A3510 at 34:1-5 ("Our argument is that they are not on this motion because if you look at who they served, if you look at who they named, it is not—the entity itself, not the debtor, not Provisional Holdings, not by whatever name they want to call it, they didn't name it. And so it is not here.")).

Rather than correct its filing or bring a motion against Appellant, Appellee instead sought to use Appellant's counsel to purportedly effect service on individuals named in the motions, incorrectly calling them Appellant's counsel's "true clients," (A2156)—an allegation that Appellant's counsel has unequivocally denied. Notwithstanding Appellee's subterfuge, neither the January 29 Order nor the February 27 Order included Appellant under its definition of "Ordered Party" or as a party against whom sanctions were sought (A1931-32; A3620 at ¶¶ 1-2). Finally, the Third Sanctions Motion also failed to name Appellant (A2164 at ¶ 25). And during oral argument, Appellant's counsel *again* raised the procedural

deficiencies with the court (A4381-82 at 33:14-34:14). Appellee had every opportunity to correct the record in order to provide Appellant with the proper notice and not only declined to do so, it chose to deny that Appellant was a respondent by denying its existence. (*see* A1432 at 48:20-21; A1753 at 42:9-12; A3506 at 30:13-17; A2164 at ¶ 25).

The Appellee cannot argue that, notwithstanding its own underhanded tactics regarding notice, the Bankruptcy Court could enter the March 13 Order *sua sponte* under its inherent powers under section 105. But the notice requirements likewise apply to sanctions imposed under section 105 (*see In re JJE & MM Grp. LLC*, 692 F. Appx. at 45) and the Bankruptcy Court never entered any order to show cause or notified Appellant's counsel that it was considering sanctions against Appellant when counsel raised the issue of notice at the hearing (*see* A4381 at 33:14-34:14). "[A]t a minimum, the notice requirement 'mandate[d]" that the Bankruptcy Court inform Appellant of "(1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that [Appellant could] prepare a defense.'" *Mantell v. Chassman*, 512 F. Appx. 21, 23 (2d Cir. 2013) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). The Bankruptcy Court did not do so.

Against this backdrop, it was error for the court to suddenly—after the court (and Appellee) actively disclaimed Appellant's very existence (*see supra* p. 22-23)—include Appellant as a sanctioned party (A4448-53).

### B. Appellee's Attacks On Counsel Deprived Appellant Of The Opportunity To Be Heard

"In addition to notice, the subject of a motion for sanctions is also entitled to an opportunity to be heard." *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 335 (2d Cir. 1999). While the practical result of this requirement is often a hearing, the Supreme Court has articulated a more fundamental principle that an alleged contemnor should be able to "speak in his defense." *Doral Produce Corp. v. Paul Steinberg Assoc.*, 347 F.3d 36, 40 (2d Cir. 2003). And the Second Circuit has noted that "[a] line of decisions of the Supreme Court, our court, and other circuits has consistently taught that summary punishment without an opportunity even to speak in one's defense is regarded with disfavor." *Id.* (citing *Sacher v. United States*, 343 U.S. 1, 8 (1952)).

Appellee's conduct throughout the three sanctions motions amounted to a deprivation of Appellant's constitutional right to be heard. As a corporation, Appellant was entitled to appear in the proceedings only through counsel. *See Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 225 n.7 (2d Cir. 2002) ("Corporations are, of course, only permitted to appear through counsel."). And more fundamentally, "the right to counsel is the foundation for our adversary

system." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). But from the First Sanctions

Motion through the March 13 Order (and beyond), Appellee has engaged in what

has recently become an all-too-common campaign to attack lawyers (*see Perkins

Coie LLP v. United States Dep't of Justice*, 2025 WL 1276857, at *36 (D.D.C.

May 2, 2025)) through multiple frivolous sanctions motions against both domestic

and foreign counsel in order to abuse the court's processes and deprive Appellant

of its right to speak in its defense. *C.f. Nakash v. United States Dep't of Justice*,

708 F. Supp. 1354, 1370 (S.D.N.Y. 1988) (criticizing the practice of "[a]llowing

adversaries an unrestricted ability to initiate a process in which competent

attorneys must justify, under the threat of sanctions, actions taken in good faith").

Each time Reed Smith, indeed any attorney, even attempted to advance an

argument that could have benefitted Appellant, Appellee sought to silence those

attorneys. Specifically, it: accused Reed Smith of secretly representing the

individual officers and directors of Appellant (A1539 at ¶ 20 ; A2164 at ¶ 25);

threatened to file ethical complaints to legal regulatory bodies (A1321-23); sought

to disgorge counsel's fees (A1526-1612); and threatened to and did file further

sanctions (A492-944; A2155-2297; A2804-2938; *see also* A4382 at 34:10-14

("And they are, I think, abusing Your Honor's orders. But I can't sit here and argue

that because anytime anybody tries to call something to Your Honor's attention,

they get accused of sanctions.")). And each of the three sanctions motions against

Reed Smith sought to hold it liable "jointly and severally," without *even offering evidence* of any "coordinated effort" (*see* A1385-1525; A1661-83; A1712-A1930; A3474-A3610; A4346-4447 (all failing to offer evidence regarding a coordinated effort) as is required under the law. *See AAlpharma Inc. v. Kremers Urban Dev. Co.*, 2006 WL 3096026, at *6 (S.D.N.Y. Oct. 31, 2006) ("Here, the Court finds no 'coordinated effort,' between client and counsel, requiring joint and several liability."). And notwithstanding Appellant counsel's pleas that the Bankruptcy Court reign in this behavior (A2390-93 at ¶¶ 44-50; A2373; A3510 at 34:6-9 ("So I'm now trying to answer questions about Reed Smith because this is, as he says this, this fifth time, they're trying to accuse Reed Smith. In fact, it's completely vexatious, and it's improper."), the Bankruptcy Court declined to do so.

The result was that Appellant was unable to mount a proper defense (indeed any defense given the lack of notice) on the Third Sanctions Motion and the court entered the March 13 Order against Appellant in violation of Appellant's due process rights.

## II.     The Bankruptcy Court Failed To Specify The Conduct For Which Appellant Would be Sanctioned And Inappropriately Imposed Joint And Several Liability

In imposing sanctions, a court must "specify the sanctionable conduct and the authority for the sanction." *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1346 (2d Cir. 1991). The Second Circuit has found it "imperative that the

court explain its sanctions order with care, specificity, and attention to the sources of its power.'" *Worms*, 78 F.4th at 568 (quoting *Kalikow*, 602 F.3d at 96). Here, the Bankruptcy Court failed to meet that standard in two ways.

**First**, the Bankruptcy Court entered an order attaching a list of proceedings and made the summary conclusion that (1) each of the proceedings "oppose[d] or undermine[d] . . . the judicial recognition of the Confirmation Order," and (2) that Appellant had the authority to do so (A4450-53). In doing so, the Bankruptcy Court failed to specify why each and every filing and/or proceeding "undermined" judicial recognition of the Confirmation Order. The Bankruptcy Court further failed to distinguish between which entity had control over the ability to withdraw each filing/proceeding and instead, inappropriately imposed joint and several liability on all Violating Parties regardless of whether any party had the authority to carry out the withdrawal. *See Cablevision Sys. N.Y.C. Corp. v. Cicero*, 2000 U.S. Dist. LEXIS 21903, at *31 (S.D.N.Y. Aug. 28, 2000) (Decl. of Louis M. Solomon, Ex. 1 (filed herewith)) ("Joint and several liability is inappropriate in a case in which each defendant has separate liability for his discrete conduct.").

**Second**, the Bankruptcy Court never performed a proper international comity analysis. "Comity 'is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.'" *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) (quoting *Hilton v. Guyot*,

159 U.S. 113, 164 (1895)). It is a common feature of the international system that foreign proceedings and foreign judgments do not impugn the law of sovereign nations, but rather proceed through a recognition process. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 (9th Cir. 2009) ("The extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by 'the comity of nations.'").

The Second Circuit has held that it is appropriate for a court to conduct a comity analysis before infringing on sovereign interests of a foreign state. *Next Invs., LLC*, 12 F.4th at 132 ("A comity analysis drawing upon § 403 is . . . appropriate *before* ordering a nonparty foreign bank to freeze assets abroad in apparent contravention of foreign law to which it is subject.") (citing *Gucci Am. v. Bank of China*, 768 F.3d 122, 139 (2d Cir. 2014)). "[T]he concept of international comity requires a particularized analysis of the respective interests of the foreign nation and the requesting nation." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 111 (2d Cir. 2013) (internal quotations omitted). And "[t]he Second Circuit has clarified that this analysis requires a court to weigh 'all of the relevant interests of all of the nations affected by the court's decision.'" *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 335 (S.D.N.Y. 2018) (emphasis added). For example, in *Gucci,* the Second Circuit remanded to the district court an order so that it could apply the Restatement considerations, which it did not do in the first instance. 768 F.3d at 139. Further,

the court held that, "given the important role that comity plays," even when not raised below, such an issue should not be deemed forfeited. *Id*. at 140.

Here, given that the March 13 Order relied on the Confirmation Order as its authority for entering the sanctions (A4448-49), the Bankruptcy Court should have engaged in the comity analysis directed by the Second Circuit and guided by the Restatement. It never meaningfully did so. For example, in its January 29 Order, the Bankruptcy Court made only a cursory reference to comity to conclude summarily that the Confirmation Order did not implicate international comity (A1971 at 36:9-10) ("[J]ust because the plan references compliance with applicable law, that does not mean that there is applicable law that needs to be applied here."); *see also* A4422 at 74:19-25; A4423 at 1:7). And in the Bankruptcy Court's March 13 oral ruling, where it supposedly addressed comity assuming it was applicable, all the Bankruptcy Court said was that certain entities "do not have to oppose Reorganized Eletson Holdings' actions in Liberia and Greece seeking recognition of the confirmation order" (A4423 at 75:5-7). Under Second Circuit authority, such an unsubstantiated rationale fails to adequately balance the interests of the relevant sovereigns and is thus insufficient. Therefore, the March 13 Order, and the January 29 from which it flowed, were issued in error.

Given that the Bankruptcy Court failed to conduct the appropriate analyses required before imposing sanctions, the March 13 Order should, at a minimum, be reversed and remanded for further proceedings.

### III.    The Bankruptcy Court Abused Its Discretion By Impermissibly Applying The Bankruptcy Code And Its Order Extraterritorially And In Violation Of International Comity

Even aside from all the procedural deficiencies leading up to the March 13 Order, sanctions were unwarranted because there was no "clear and convincing evidence that the alleged contemnor violated the [] court's edict." *King v. Allied Vision, Ltd*., 65 F.3d 1051, 1058 (2d Cir. 1995). In order to demonstrate contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King*, 65 F.3d at 1058. And a bankruptcy court may hold a party in contempt for violation of its prior order only "if there is no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019).

Here, none of the three criteria are established given the impermissible extraterritorial application of the Bankruptcy Code and violation of principles of international comity. The March 13 Order—based on the Bankruptcy Court's underlying Confirmation Order and January 29 Order directing "Debtors and their

Related Parties, including without limitation, the Ordered Parties . . . to comply with the Confirmation Order and the Plan to assist in effectuating, implementing, and consummating the terms thereof" (A1933 at ¶ 1)—takes an extraordinary step: dictating to foreign courts who has the authority to speak before them and what positions they may take. But, as this Court recognized, U.S. courts cannot compel such conduct: "I don't think I can tell the [foreign] court who can speak for Eletson Holdings in [foreign sovereigns]" (A3899 at 39:21-22); *id*. at 39:22 ("I would not purport to do that"). Of course this is true. U.S. courts, and U.S. law, do "not rule the world." *Abitron Austria GmbH v. Hetronic Int'l, Inc*., 600 U.S. 412, 428 (2023) (citations omitted).

In spite of this settled appreciation of comity, the Bankruptcy Court has continuously ruled in favor of limitless applications of its orders, beginning with the Confirmation Order and culminating in the March 13 Order, without ever meaningfully addressing the interests of Greece—Holdings' COMI. If it ever did, which it should, the answer is clear—comity instructs that foreign recognition must take place, and the positions taken in such proceedings cannot, on the facts before the Court, form the basis for sanctions.

A proper analysis of comity reveals that the March 13 Order and Confirmation Order upon which it relies violate the principle. Under the UNCITRAL Model Law, the Plan for Holdings—whose Center of Main Interest is

in Greece—must be recognized in Greece before it can become effective. U.S. courts, in furtherance of the separation of powers, owe comity to a foreign sovereign's decision whether to recognize the judgment of a U.S. tribunal. That is because "[c]omity can . . . be described as a 'golden rule among nations—that each must give the respect to the laws, policies and interests of others that it would have others give to its own in the same or similar circumstances.'" *Usoyan v. Republic of Turk.*, 6 F.4th 31, 48 (D.C. Cir. 2021).

Overall, "[c]omity is a doctrine that takes into account the interests of the United States, the interests of the foreign state, and those mutual interests the family of nations have in just and efficiently functioning rules of international law*." Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commun. Corp. plc)*, 93 F.3d 1036, 1048 (2d Cir. 1996). Consistent with these general principals, the Second Circuit has instructed that "'when a court order will infringe on sovereign interests of a foreign state,' we eschew any categorical rule and instead draw on the eight-factor framework found in Section 403 of the Restatement (Third) of Foreign Relations Law." *Next Invs., LLC*, 12 F.4th at 131-32. Section 403 asks courts to consider:

1.   the link of the activity to the territory of the regulating state, *i.e.*, the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory;

2.   the connections, such as nationality, residence, or economic activity, between the regulating state and the person principally responsible for

the activity to be regulated, or between that state and those whom the
regulation is designed to protect;

3.      the character of the activity to be regulated, the importance of
regulation to the regulating state, the extent to which other states
regulate such activities, and the degree to which the desirability of
such regulation is generally accepted;

4.      the existence of justified expectations that might be protected or hurt
by the regulation;

5.      the importance of the regulation to the international political, legal, or
economic system;

6.      the extent to which the regulation is consistent with the traditions of
the international system;

7.      the extent to which another state may have an interest in regulating the
activity; and

8.      the likelihood of conflict with regulation by another state.

Restatement (Third) of Foreign Rel. L. § 403.

Under this framework, the Bankruptcy Court should not have imposed the

relief in the March 13 Order.

(i)      Factors 1-3; 7: Connection of the activity and parties to Greece,
and Greece's interest in regulating the activity

Factors 1 through 3 and 7 relate to the connections the conduct and parties

have to another state and their importance to that state. These factors weigh in

Appellant's favor. From the start, the Petitioning Creditors well understood that

two of the three debtors—including Holdings—were foreign entities, so re-

structuring and/or recognition proceedings would need to occur in both the U.S.

and foreign jurisdictions (A197-200 § VIII.A.3). And under the UNCITRAL Model Law, Holdings' COMI as of the date of the Confirmation Order has a central role to play in the restructuring of Holdings, and must ensure that it complies with its public policies, including a determination of the existence of bad faith. (*See* A2083 at ¶ 8; A2085 at ¶ 12 ("Under Greek law, in insolvency cases outside Greece and the EU, in order for the Confirmation Order and Plan to have any effect in Greece, a Greek Court must recognize and confirm the Confirmation Order and Plan" (citing articles 4, 6 and 15 of law 3858/2010, Uni Membered First Instance Court of Rethymnon 166/2012, Multi Member First Instance Court of Athens 437/2013)). Greece has not yet recognized that restructuring.

Moreover, by its operation, the March 13 Order impermissibly sanctions Appellant for exercising its rights by *participating in* litigation in foreign jurisdictions by virtue of the Confirmation Order. But importantly, it does so because the Bankruptcy Court disagrees with the Greek courts as to who gets to speak on behalf of Eletson Holdings (even if only provisionally). This is a clear example of a U.S. court dictating who can speak in what foreign courts, and even further, what positions they can or cannot take. In other words, the injunctive relief operates "directly against the foreign court[s]." *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987).

(ii)    <u>Factors 4-6: Expectation important to the international system that may be undermined</u>

With respect to factors 4-6, reciprocity is important. *Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 8 F.4th 136, 161 (2d Cir. 2021) (considering reciprocity in a comity analysis). By virtue of its adoption of the UNCITRAL Model Law, Greece has expressed its expectation that its interests will be respected by the international community. And Greece may deem that the March 13 Order and the orders on which it relies violate its interests and should not take effect, just as the U.S. applies such an interest to foreign judgments sought to be applied within its borders. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) (foreign judgments that "violate domestic public policy" are not afforded comity). Indeed, this Court previously noted it "appears to be unexceptional" that "'[t]he confirmation order requires recognition before it is binding in foreign jurisdictions,'" later explaining that "[i]t may be correct that the new board and new shareholders will not be recognized in those countries until there is a recognition proceeding" (A3961 at 101:24-25; A3962 at 102:12; A3964 at 104:7-9). Simply, exerting this authority of foreign judgments without allowing that process to take place abroad violates the "golden rule"—i.e., comity. *See Usoyan*, 6 F.4th at 48 (likening comity to the "golden rule.").

(iii)    Factor 8: Likelihood of conflict between Greek law and Orders

The Plan, Confirmation Order, January 29 Order, and thus the March 13

Order, raise significant issues of extraterritoriality. As discussed, to the extent the

Bankruptcy Court and its orders purport to override the need to obtain Greek court

recognition to restructure a Greek company, they impermissibly project the

Bankruptcy Code's restructuring provisions extraterritorially. *See Abitron*, 600

U.S. at 417 (noting presumption against extraterritorial application of U.S.

statutes). Moreover, the Bankruptcy Court specifically directed that the foreign

representative of Holdings could "act in *any way* . . . in *any other country*," (A4343

at ¶ 3) (emphasis added). But the Bankruptcy Code provides that U.S. courts may

only authorize an entity "to act in a foreign country on behalf of an estate . . . in

any way permitted by the applicable foreign law"—not in conflict with it.

11 U.S.C. § 1505 (emphasis added).

Further, at the time March 13 Order was entered, it directly conflicted with

the orders of the Greek courts at the time, which held that Appellee did not have

the authority to speak on behalf of Eletson Holdings (A1147-50; A2114 at ¶ 11).

B.  *The Bankruptcy Court Improperly Applied Section 1142 To Exclusively
     Foreign Conduct*

Appellee cannot find safe-haven in 11 U.S.C. § 1142, which it and the

Bankruptcy Court give unlimited reach. The Supreme Court has repeatedly held

that there is a "longstanding principle of American law 'that legislation of

Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC v. Arabian Am. Oil Co*., 499 U.S. 244, 248 (1991), *superseded by statute on other grounds*. In this respect, the Supreme Court has developed a two-step framework to determine extraterritoriality. Courts must ask (1) if "Congress has affirmatively and unmistakably instructed" that a law applies extraterritorially; and if not, (2) if the case at bar involves a domestic application of the statute." *See, e.g., Abitron*, 600 U.S. at 417.

As to "step one," "it is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality." *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 118 (2013); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 264 (2010) (reviewing sections of Exchange Act for extraterritorial intent). Sections 1142 contains no clear statement; each uses the insufficient "any." *Id.* at 118. As to "step 2", all conduct Appellee seeks to order is to take place *abroad; none is domestic. See WesternGeco LLC v. ION Geophysical Corp*., 585 U.S. 407, 414 (2018) (focus test turns on "determining how the statute has actually been applied"). "Of course, if all the conduct. . . took place outside the United States, then courts do not need to determine . . . the statute's 'focus' at all." *Abitron,* 600 U.S. at 419. A plain reading of Section 1142 shows that Congress did not intent it to apply extraterritorially, as the Bankruptcy Court did in error.

**IV.** **If The Court Is Not Inclined To Grant The Appeal, The Court Should Abstain From Reaching the Merits Pending Adjudication by the Court of Appeals, Whether Because Jurisdiction Has Been Displaced Or In The Exercise Of Discretion, And In All Events Stay The Running Of Any Sanctions**

Even if this Court maintains jurisdiction, it should nonetheless abstain from adjudicating its merits pending a decision in the Second Circuit Appeals and stay the running of any sanctions under the March 13 Order.

The issues that are now before the Second Circuit could determine the predicate of the March 13 Order. If, as Provisional Holdings asserts—and we respectfully understand that this Court has determined the opposite, subject to appeal—Reorganized Holdings must have the Bankruptcy Court's Plan and Confirmation Order recognized in Greece before it is finally effective, the predicate to the March 13 Order will be absent, and hence any sanctions imposed would be invalid and should be vacated. Under settled law, therefore, the Bankruptcy Court's and this Court's jurisdiction has been displaced pending the Second Circuit's consideration. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

In the alternative, the Court can, and should, "in the interest of judicial economy, enter a stay pending the outcome of proceedings which bear upon the case, even if [the Court decides that] such proceedings are not necessarily controlling of the action that is to be stayed." *Diatek Licensing LLC v. Estrella*

*Media, Inc.*, 2022 WL 5108090, at *1 (S.D.N.Y. Oct. 4, 2022) (Liman, J.)
(citations omitted). This power lies "firmly within a district court's discretion."
*Lasala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005). As is
relevant here, "[c]ourts regularly stay cases where an appeal in a related case will
resolve (or at least greatly simplify) the issues in the stayed case." *Pride v. Zimmer,
Inc. (In re Zimmer M/L Taper Hip Prosthesis)*, 2021 WL 5963392, at *4 (S.D.N.Y.
Dec. 16, 2021).

Courts in the Southern District ordinarily weigh five considerations set forth
in *Kappel v. Comfort*, when deciding whether to issue a stay pending a decision in
a related federal case. *Kappel v. Comfort,* 914 F. Supp. 1056, 1058 (S.D.N.Y.
1996) ("Balancing these factors is a case-by-case determination, with the basic
goal being to avoid prejudice."). Those factors are:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the
> civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2)
> the private interests of and burden on the defendants; (3) the interests of the
> courts; (4) the interests of persons not parties to the civil litigation; and (5) the
> public interest.

Where a question properly on appeal before a circuit court "will be of
substantial importance to the instant matter" and "will provide clarification on key
issues in this case," the *Kappel* standard is readily cleared. *McCracken v. Verisma
Sys.,* 2018 WL 4233703, at *4 (W.D.N.Y. Sept. 6, 2018) (granting stay based on
pendency of appeal); *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 2012

WL 252139, at *5 (S.D.N.Y. Jan. 24, 2012) (same, recognizing that "[w]hile the claims of Fried I do not track exactly the claims of this lawsuit, the claims are similar and target the same transgressions and injuries."); *Catskill Mts. Chapter of Trout Unlimited, Inc. v. United States EPA*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (granting stay to wait for disposition of case on appeal to the Eleventh Circuit). Here, there is "significant overlap between this lawsuit and the lawsuit on appeal, both legally and factually, which is a solid ground upon which to issue a stay." *Fried*, 2012 WL 252139, at *5.

Before the Second Circuit is, inter alia, the question of who has the authority and capacity to act on behalf of Eletson Holdings in light of Petitioning Creditors' failure to obtain the promised foreign recognitions of the Plan and Confirmation Order (*see* Dismissal Appeal, Dkt. 30.1 at 13-15), which would include in these proceedings. Importantly, that very issue underpins this Appeal. If Provisional Holdings indeed is the entity that possesses the authority to act on behalf of Holdings, then there will be, at that point as recognized by the Second Circuit, a serious outstanding issue as to if the Plan has been properly and fully consummated, greatly calling into question whether the March 13 Order is "clear and unambiguous," and therefore, properly the basis for sanctions. *See King*, 65 F.3d at 1058 (contempt requires a finding that an order is "clear and unambiguous," meaning it is "one that leaves no uncertainty in the minds of those

to whom it is addressed."); *see also Chao v. Gotham Registry, Inc*., 514 F.3d 280, 292 (2d Cir. 2008) ("[A]ny ambiguity in the law should be resolved in favor of the party charged with contempt."). Thus, "resolution of th[e] [Second Circuit Appeal] should guide this Court in ruling on one of the key issues in this litigation," which is enough to justify a stay. *Goldstein v. Time Warner N.Y.C. Cable Grp*., 3 F. Supp. 2d 423, 439 (S.D.N.Y. 1998); *Joiner v. NHL Enters*., 2024 WL 639422, at *2 (S.D.N.Y. Feb. 15, 2024) (stay warranted even where an appeal will only resolve a minority of issues raised in a case).

Any other Party's subjective beliefs about the strengths of the Second Circuit Appeals should not sway the Court. With due respect, it proves nothing that the Bankruptcy Court and the District Court has ruled against Provisional Holdings when the Second Circuit is considering the validity of those very decisions. In fact, the Second Circuit is giving such arguments due consideration by, accepting the appeal notwithstanding the multiple attempts by Reorganized Holdings to prevent appellate review of the merits (Dismissal Appeal, Dkt. 16).

The Second Circuit might dismiss the appeal in the future, but until it does, or until it decides the appeal on the merits, this Court should decline to answer the predicate questions underpinning the March 13 Order.

Further, abstaining in deciding this Appeal is in the interest of Appellee. Here, "going forward with this lawsuit before the Second Circuit rules in [the

Second Circuit Appeal] will cause both parties to suffer the extra litigation costs of duplicative" proceedings addressing overlapping questions." *Fried*, 2012 WL 252139, at *5. And none will suffer prejudice, as "'mere' delay does not, without more, necessitate a finding of undue prejudice." *McCracken*, 2018 WL 4233703, at *3. The predicate questions which instruct that a stay is appropriate will remain unanswered, until the Second Circuit issues its decisions.

## CONCLUSION

For the foregoing reasons, the Appellant respectfully requests that the March 13 Order be reversed or, in the alternative, that the Court stay that Order including the running of any sanctions pursuant to it until the Second Circuit has ruled on the pending Dismissal Appeal.

Dated: June 9, 2025
        New York, NY

/s/ *Michael S. Lazaroff*
Michael S. Lazaroff
RIMÔN, P.C.
400 Madison Ave, Suite 11D
New York NY 10017
(646) 738-4151
michael.lazaroff@rimonlaw.com

Anthony C. Acampora
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
anthony.acampora@rimonlaw.com

/s/ *Louis M. Solomon*
Louis M. Solomon
Colin Underwood
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
lsolomon@reedsmith.com
cunderwood@reedsmith.com

*Counsel for Provisional Eletson Holdings Inc.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS**

This brief complies with the type-volume limit in Rule 8015(a)(7)(B)(i) of the Federal Rules of Bankruptcy Procedure because this brief contains 10,564 words, excluding the parts of the brief exempted by Rule 8015(g) of the Federal Rules of Bankruptcy Procedure, as counted using the word count of the word-processing system used to prepare the brief.

This brief is submitted in 14-point Times New Roman font and double-spaced under Rule 8015(a)(5)(A) of the Federal Rules of Bankruptcy Procedure.

Dated: June 9, 2025

New York, NY                              /s/ Louis M. Solomon

*Counsel For Provisional
Eletson Holdings Inc.*

- 46 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 9, 2025, I caused an electronic copy of the *Appellant's Opening Memorandum Of Law* to be electronically filed with the United States District Court for the Southern District of New York using the CM/ECF system, which, pursuant to Fed. R. Bankr. P. 8011(c)(2) and (3), will automatically send notification of such filing to counsel of record.

Dated: June 9, 2025

     New York, NY

                                    /s/ Louis M. Solomon

                                    *Counsel For Provisional*
                                    *Eletson Holdings Inc.*