## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>ELETSON HOLDINGS INC.[1], et al.,<br>------------------------------------------------<br>Provisional Eletson Holdings Inc.<br><br>                    *Appellants*<br><br>    -- against –<br><br>Reorganized Eletson Holdings Inc.<br><br><br>                    *Appellees* | Chapter 11<br><br>1:25-cv-02824-LJL<br>(Related to 23-cv-7331-LJL, 24-cv-05096-LJL, 24-cv-08672-LJL, 25-cv-02789-LJL, 25-cv-02811-LJL, and 25-cv-02895-LJL) |

### APPELLANT'S MEMORANDUM OF LAW IN OPPOSITION TO REORGANIZED HOLDINGS' MOTION TO DISMISS

Michael S. Lazaroff
RIMÔN, P.C.
400 Madison Ave, Suite 11D
New York NY 10017
(646) 738-4151
michael.lazaroff@rimonlaw.com

Anthony C. Acampora
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
anthony.acampora@rimonlaw.com

Louis M. Solomon
Colin Underwood
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
lsolomon@reedsmith.com
cunderwood@reedsmith.com

*Counsel for Provisional Eletson Holdings Inc.*

---

[1] The Bankruptcy Court has ordered this footnote to be included in this caption: "Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. On [March 5, 2025], the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on [March 5, 2025], all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119" (Bankr. Dkt. 1515 ¶ 7).

- i -

## **TABLE OF CONTENTS**

                                                                                                                                                            **Page**

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ........................................................................................................3

        A. The Bankruptcy Proceedings and the Plan .................................3

        B. Greece Has Not Recognized the Reorganization of Holdings ...5

        C. The Second Circuit Appeal..........................................................6

        D. The June 6 Ruling .......................................................................8

ARGUMENT ..............................................................................................................8

    I. Appellant Has Sufficient Existence and Standing to Appeal
the March 13 Order .....................................................................................8

    II. The Motion to Dismiss Highlights Why the Court Should
Stay Adjudication of the Motion and the Appeal Pending
Resolution of the Second Circuit Appeals ...........................................13

CONCLUSION........................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Branch of Citibank, N.A. v. De Nevares*,
   74 F.4th 8 (2d Cir. 2023) ...................................................................................................9

*Catskill Mts. Chapter of Trout Unlimited, Inc. v. United States EPA*,
   630 F. Supp. 2d 295 (S.D.N.Y. 2009) ..............................................................................13

*Fried v. Lehman Bros. Real Estate Assocs. III*,
   L.P., 2012 WL 252139 (S.D.N.Y. Jan. 24, 2012) .............................................................13

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
   991 F.3d 370 (2d Cir. 2021) ...............................................................................................9

*Griggs v. Provident Consumer Discount Co.*,
   459 U.S. 56 (1982)............................................................................................................13

*Licensing by Paolo v. Sinatra*
   (in Re Gucci), 126 F.3d 380 (2d Cir. 1997) .......................................................................9

*McCracken v. Verisma Sys.*,
   2018 WL 4233703 (W.D.N.Y. Sept. 6, 2018)...................................................................13

*Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*,
   760 F.2d 390 (2d Cir. 1985) .............................................................................................14

*United States v. White*,
   2024 WL 5103317 (2d Cir. Dec. 13, 2024).......................................................................13

**Other Authorities**

UNCITRAL Model Law on Cross-Border Insolvency with Guide to
   Enactment, Art. 17,
   https://uncitral.un.org/sites/uncitral.un.org/files/mediadocuments/u
   ncitral/en/insolvency-e.pdf ..................................................................................................4

## PRELIMINARY STATEMENT

By specifically naming Provisional Holdings as a sanctioned party in the March 13 bankruptcy order (the "March 13 Order") that is the subject of this appeal, the Bankruptcy Court recognized that Appellant Provisional Eletson Holdings, Inc. ("Appellant" or "Provisional Holdings") has sufficient existence to hold it accountable, including by imposing affirmative obligations on Provisional Holdings to take certain actions in proceedings outside of the United States. Yet, Reorganized Eletson Holdings Inc. ("Reorganized Holdings" or "Appellee") seeks to evade appellate review of the March 13 Order—which assesses a $5,000 per day sanction against Provisional Holdings for failing to take certain actions—by claiming Provisional Holdings lacks existence to appeal that order. At the same time, Appellee has recently filed a motion in the Bankruptcy Court *against Provisional Holdings* where Reorganized Holdings has sought to modify the March 13 order and increase the sanctions *against Provisional Holdings*.

Accordingly, and with continued respect for the Bankruptcy Court, Appellant filed the instant appeal, which seeks review of the March 13 Order by which Appellant has been clearly aggrieved. Indeed, a briefing schedule was set and no party challenged whether this appeal could move forward. But instead of filing a motion to dismiss the appeal *before* Appellant filed its opening brief or otherwise consenting to Appellant's request for an extension of time, Appellee nevertheless

forced Appellant to expend substantial resources in preparing and filing its opening brief by filing its Motion *after* Appellant filed its opening brief. In any event, Appellee's Motion lacks merit. The Court should deny the Motion and allow the parties to proceed on the merits of the appeal.

First, contrary to Appellee's position, Appellant has sufficient existence for this Court to consider this appeal. As set forth below, Appellant has been and continues to be recognized (1) by a Greek Court, (2) by Reorganized Holdings in its first sanctions order (which is subject to a related appeal), (3) by the Second Circuit, which has agreed to hear the issue of Provisional Holdings' existence in tandem with the appeal of this Court's February 14, 2025 attorney displacement and turnover order, (4) again by the Bankruptcy Court in the March 13 Order issuing sanctions against Provisional Holdings, and (5) by Appellee in a recent motion to modify the March 13 Order, specifically naming Provisional Holdings as a respondent. Indeed, the Bankruptcy Court determined that Provisional Holdings has sufficient existence to be held in contempt. Appellee's Motion thus presents a critical and dispositive question: If Provisional Holdings does not exist, then how can it be held in contempt and liable for sanctions?

It is important for Appellant to observe the following: Appellant recognizes that Appellee asserts, over and over, that this Court has already ruled on the issues that Appellant feels it has a right to raise—and in fact has already raised with the

Second Circuit—on appeal. Appellee's positions in the Motion assume the answers to the very question at issue in the pending appeals in the Second Circuit: Whether the U.S. bankruptcy confirmation process for Eletson Holdings, Inc. ("Holdings"), a Liberian company headquartered and with its center of main interests in Greece, was flawed, and the confirmation order purporting to effectuate the Plan—which a Greek court has yet to recognize—therefore should not have been issued by the Bankruptcy Court. No party should be permitted to insulate the Bankruptcy Court's and this Court's orders from appellate review based on the presumption that the lower court orders are correct.

## BACKGROUND

Appellant assumes the Court's familiarity with the facts of the case and incorporates by reference those set forth in its opening brief (Dkt. 19 ("App. Br.")). Provided below for the Court's convenience are the facts most pertinent to the Motion.

### A. The Bankruptcy Proceedings and the Plan

Holdings entered bankruptcy, as a company incorporated in Liberia and with its center of main interests and principal place of business in Greece (App. Br. at 7), through an involuntary bankruptcy petition filed by certain creditors (the "Petitioning Creditors"). The case was converted to Chapter 11, and both the Petitioning Creditors and the debtor, Holdings, filed competing plans of

reorganization. On October 25, 2024, the Bankruptcy Court issued a decision (Bankr. Dkt. 1212)[2] (the "Confirmation Decision") confirming the Petitioning Creditors' Chapter 11 plan of reorganization (the "Plan"), which formed the basis for the confirmation order, entered on November 4, 2024 (the "Confirmation Order") (Bankr. Dkt. 1223).

In the Plan, and supporting and binding disclosure statement, the Petitioning Creditors made a series of promises that, if their Plan were confirmed, they would seek recognition of the Confirmation Order in the relevant foreign countries and would not implement the Plan until such recognition was obtained *(see, e.g.,* Bankr. Dkt. 847 § VIII.A.3; Bankr. Dkt. 1132 §§ V.5.1, V.5.2, V.5.4, V.5.9, IX.9.1, XI.11.3). Indeed, the Plan contains express conditions barring it from becoming effective until such foreign approvals are obtained. Relevant here, under Greek law, which adopts the United Nations Commission on International Trade Law (UNCITRAL) Model Law on Cross-Border Insolvency, any bankruptcy plan for Holdings, whose Center of Main Interest is in Greece, must be recognized in Greece before it becomes effective. *See* UNCITRAL Model Law on Cross-Border

---

[2] Citations to "Bankr. Dkt." refer to the docket in *In re Eletson Holdings, Inc.*, Case No. 23-10322-JMP, pending before the United States Bankruptcy Court for the Southern District of New York.

Insolvency with Guide to Enactment, Art. 17, https://uncitral.un.org/sites/uncitral.un.org/files/mediadocuments/uncitral/en/insolvency-e.pdf; App. Br. at 7).

On November 7, 2024, before the Effective Date, Holdings filed a notice of appeal of the Confirmation Decision (Bankr. Dkt. 1233). Without any attempt to obtain foreign recognition of the Plan and Confirmation Order, the Petitioning Creditors purported to waive all conditions to the effectiveness of the Plan, including complying with applicable non-U.S. law, to trigger the Effective Date (Bankr. Dkt. 1258).

### B.     Greece Has Not Recognized the Reorganization of Holdings

In response to the resignation of four of Holdings' board members on November 8, 2024, two minority shareholders of Holdings applied to the Court of First Instance in Piraeus, Greece requesting the appointment of provisional management of Holdings.  Upon that application, on November 12, 2024, the Greek court provisionally appointed four additional board members to enable Holdings to undertake a limited set of corporate actions until a final hearing on the application (Bankr. Dkt. 1290, Ex. A at 34-36) (the "Provisional Order").  The Provisional Order did not result in the creation of a new entity; rather, it expanded Holdings' board—as recognized in Greece—from four back to eight members.

Separately, on February 3, 2025, Appellee filed an application for the recognition of the Confirmation Order before the Court of First Instance in Athens,

- 5 -

Greece and asked the court to immediately issue a provisional order appointing Appellee's representative as the manager of Holdings until a judgment is issued on that application (Bankr. Dkt. 1410 at Ex. A ¶ 4). On February 5, 2025, after an adversary proceeding, a three-judge panel in Athens declined to recognize the reorganization of Holdings and declined to recognize Reorganized Holdings' representative (*id.* ¶ 11). Accordingly, that Greek Court (the Athens Court) has recognized that Holdings continues to exist in Greece distinct from Reorganized Holdings (Declaration of John Markianos-Daniolos ("Daniolos Decl.") (attached as **Exhibit A**) ¶¶ 5-6).

### C. The Second Circuit Appeal

Holdings appealed the Confirmation Decision to this Court prior to the purported Effective Date (Bankr. Dkt. 1233). After its shotgun waiver of binding and critical promises in the Plan, Appellee used the purported Effective Date to claim that it controlled Holdings and its appellate rights, and purported to voluntarily dismiss the appeal of the Confirmation Decision through a stipulation (App. Br. 18). Ultimately, this Court granted that voluntary stipulation (the "Confirmation Appeal Dismissal Order"), without accepting papers from Appellant (*id.*). On January 16, the undersigned counsel filed on behalf of Appellant a notice of appeal from this Court's Confirmation Appeal Dismissal Order (*id.*). Appellee once again moved to strike that appeal in this Court, although the appeal had already been docketed in the

Second Circuit (*id.*). On February 14, 2025, this Court granted the motion to strike, and in the alternative issued an indicative ruling that the appeal should be dismissed (*id.* at 19). On March 3, 2025, the Second Circuit issued an order directing the appeal and the related appeal of this Court's turnover order directed at Reed Smith LLP to be heard in tandem (*see e.g., In re Eletson Holdings*, 25-176 (2d. Cir.) (the "Second Circuit Appeal"), Dkt. 16; *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*, 25-445 (2d Cir.), Dkt. 9). Appellee moved to dismiss the Second Circuit Appeal.

Nonetheless, despite Appellee's efforts to dismiss the Second Circuit Appeal, the Second Circuit has, to date, declined to dismiss it (*see, e.g.*, Second Circuit Appeal). Significant here, one of the main issues presented in the Second Circuit Appeal is "whether the U.S. bankruptcy confirmation process for Eletson Holdings, Inc. . . ., a company headquartered in Greece, was flawed and the confirmation order in question — which courts in Greece have not yet recognized — therefore should not have been issued by the Bankruptcy Court" (Second Circuit Appeal, Dkt. 30.1 at 1). Indeed, that appeal "presents the novel circumstance of a bankruptcy plan for a foreign entity confirmed, non-consensually, in a U.S. bankruptcy case, and claims that the plan has gone effective despite its proponents' failures to abide by the promises they made to obtain recognition of that plan in the debtor's center of main interests in a foreign nation" (Second Circuit Appeal, Dkt. 30.1 at 20). That merits issue forms the predicate question for the appeal as to who controls Holdings, absent

- 7 -

foreign recognition of a U.S. bankruptcy plan, and if a Court can use such a bankruptcy plan to prevent entities "from asserting statutorily granted rights in Greece under Greek law" (*id*. at 25).

### D. The June 6 Ruling

On June 6, 2025, the Court of First Instance of Piraeus in Greece dismissed the application appointing the Provisional Board of Holdings (Dkt. 22) (the "June 6 Ruling"). The June 6 Ruling is a *jurisdictional ruling* in a non-final order subject to an absolute right of appeal, and which has been appealed (Dkt. 23; Daniolos Decl. ¶¶ 3-4). Moreover, the June 6 Ruling speaks from the perspective of an entirely different date—April 1, 2025—that is irrelevant to this appeal, which addresses conduct, and an order, issued *before* that date. Notwithstanding this, the June 6 Ruling does not affect the recognition proceedings *currently pending* before the Athens Court (Daniolos Decl. ¶ 5). That Greek court has not recognized the reorganization of Holdings (indeed, it may never do so). It has, however, held that Appellee does not have authority to manage Holdings (*see* Bankr. Dkt. 1410, Ex. A ¶¶ 4, 6, 10-11). None of these facts has changed following the June 6 Ruling.

## ARGUMENT

### I. Appellant Has Sufficient Existence and Standing to Appeal the March 13 Order

Appellee asserts that because of the Bankruptcy Court orders, this Court's prior orders—*all of which are on appeal*—and the June 6 Ruling, "[b]oth law and

- 8 -

logic mandate the dismissal of this appeal" (Dkt. 25 at 9). But the sole case relied upon by Appellee explains why Appellant has standing. "Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time" of filing the action. *Branch of Citibank, N.A. v. De Nevares*, 74 F.4th 8, 15 (2d Cir. 2023) (quoting *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 386 (2d Cir. 2021)). Indeed, Provisional Holdings—an existing entity recognized by the Bankruptcy Court and aggrieved in the March 13 Order—had, and continues to have, standing to prosecute the appeal of the March 13 Order. *See Licensing by Paolo v. Sinatra* (in Re Gucci), 126 F.3d 380, 388 (2d Cir. 1997) (appellate standing exists when a party is "aggrieved," meaning they are "'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court."). Appellee does not argue that Appellant was not aggrieved by the March 13 Order; rather, it argues that Appellant lacks sufficient legal existence because "[t]here is, and has always been, only one Eletson Holdings, Inc.," citing this Court's ruling on February 14, 2025 and the Bankruptcy Court's ruling *prior to* the March 13 Order (Dkt. 25 at 9). Appellant's argument is flawed for several reasons.

*First*, in connection with its first sanctions motion (subject to a related appeal at *In re Eletson Holdings, Inc.*, 25-cv-01312), Appellee itself took the position that Provisional Holdings exists, including asking the Bankruptcy Court to make findings against Provisional Holdings, using the locution "the Former Debtors (calling

- 9 -

themselves 'Provisional Holdings' or the 'Provisional Board')" (Bankr. Dkt. 1355 ¶¶ 142, 148). The "Debtors" and "Former Debtors" were named alongside "the Former Shareholders, the Former Board, and the Former Officers" (*id.* ¶ 148), making clear that the "Former Debtors"—Provisional Holdings—is a distinct entity against whom Reorganized Holdings sought relief.

*Second*, Appellee's position is inconsistent with the March 13 Order itself. The March 13 Order expressly recognized the existence of Provisional Holdings, finding that "Purported Provisional Holdings" and the "Purported Provisional Board"—distinct and separate entities—are subject to sanctions (Bankr. Dkt. 1537 at 3-4). The inclusion of Provisional Holdings in the March 13 Order reflects a recognition that the Bankruptcy Court was sanctioning Provisional Holdings—as distinct from Reorganized Holdings *who was the party seeking the relief*—for allegedly failing to take certain actions. An entity that does not exist cannot be sanctioned.

Dispositively here, on April 16, 2025, Appellee sought to modify and expand the March 13 Order, including by increasing sanctions by an additional $5,000 per day, and specifically named Provisional Holdings as a respondent on that motion and in the proposed order (*see* Bankr. Dkt. 1602 at 21). Appellee has not withdrawn that motion, which remains pending. Thus, both the Bankruptcy Court and Appellee believe that Provisional Holdings has sufficient existence to hold it accountable

- 10 -

through sanctions, but Appellee here asserts that Provisional Holdings lacks existence to appeal orders of the Bankruptcy Court by which it has been clearly aggrieved. Appellee cannot have it both ways. In fact, if Appellee's claims in the Motion were correct, the Court then would be required not to dismiss the appeal, but to grant it and reverse the March 13 Order, as a non-existent entity cannot be sanctioned. However, Appellee is wrong. There can be no question that Provisional Holdings exists, and has standing to appeal the March 13 Order.

*Third*, Appellee's assertion that Provisional Holdings does maintain a "separate existence" (Dkt. 25 at 4) is not only incorrect but has no bearing on whether Provisional Holdings exists as an entity aggrieved by the March 13 Order. Provisional Holdings is the former Debtor Eletson Holdings Inc., at least as currently recognized in Greece. Reorganized Holdings claims that the June 6 Ruling "eliminates the very foundation of Appellant's claim to speak for the Company," and as a result, Provisional Holdings "possesses no recognized authority" and "lacks standing" "to maintain this appeal" (Dkt. 14 at 2). Reorganized Holdings has recently taken a similar position in the Second Circuit, claiming that the June 6 Ruling "bears directly" on whether Provisional Holdings "has authority to pursue an appeal in [Holdings'] name" (Second Circuit Appeal, Dkt. 45.2 at 1). But these conclusions distort the facts.

Notwithstanding Appellee's reliance on the June 6 Ruling, the issue of who has the authority and capacity to direct Holdings remains ongoing in Greece. Appellant remains the only party that has been recognized as controlling Holdings in Greece (Daniolos Decl. ¶ 5). A *different* Greek court—the Court of First Instance in Athens, Greece—in *separate proceedings* before a three-judge panel, has recognized that Holdings has an existence distinct from Reorganized Holdings (*id.* ¶¶ 5-6). That court has not recognized the reorganization of Holdings by the Plan (*id.* ¶¶ 5-6).

Appellee's failure to reorganize Holdings through recognition of the Confirmation Order in the countries which have direct interests in Holdings' existence, including Greece, cannot operate to deprive Provisional Holdings of its existence. This Court previously noted it "appears to be unexceptional" that "'[t]he confirmation order requires recognition before it is binding in foreign jurisdictions,'" later explaining that "[i]t may be correct that the new board and new shareholders will not be recognized in those countries until there is a recognition proceeding" (Dkt. 25-1 at 100:24-101:2; 103:7-9). The entity that existed prior to such non-U.S. recognition is the entity which was sanctioned by the Bankruptcy Court and entitled to appeal those sanctions here.

## II. The Motion to Dismiss Highlights Why the Court Should Stay Adjudication of the Motion and the Appeal Pending Resolution of the Second Circuit Appeals

To the extent the Court disagrees that Provisional Holdings—*i.e.*, the only Holdings—exists, that question is now within the jurisdiction of the Second Circuit. As Appellant submitted in its opening brief, it is well established that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *United States v. White*, 2024 WL 5103317, at *4 (2d Cir. Dec. 13, 2024) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). And even if not jurisdictional, courts routinely stay adjudication where a question properly on appeal before a circuit court "will be of substantial importance to the instant matter" and "will provide clarification on key issues in this case." *McCracken v. Verisma Sys.*, 2018 WL 4233703, at *4 (W.D.N.Y. Sept. 6, 2018) (granting stay based on pendency of appeal); *Fried v. Lehman Bros. Real Estate Assocs. III*, L.P., 2012 WL 252139, at *5 (S.D.N.Y. Jan. 24, 2012) (same, recognizing that "[w]hile the claims of Fried I do not track exactly the claims of this lawsuit, the claims are similar and target the same transgressions and injuries."); *Catskill Mts. Chapter of Trout Unlimited, Inc. v. United States EPA*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (granting stay to wait for disposition of case on appeal to the Eleventh Circuit).

Here, no party disputes the relatedness of the matters pending before the Second Circuit, this Court, and the Bankruptcy Court. Even further, Appellee's misunderstanding of the issue on appeal reinforces why a stay here is appropriate. The issue before the Second Circuit does not hinge on the June 6 Ruling. Rather, it hinges on whether the Plan ever became effective and to what extent the Plan proponents were required to take certain steps to comply with foreign law consistent with principals of international comity.

Even more, Appellee's continued attempt to cite to the decisions of this Court when those very decisions are on appeal should not be credited (*e.g.,* Dkt. 25 at 5-7, 9 (repeatedly citing to this Court's February 14, 2025 decision)). For example, Appellee relies on this Court's February 14, 2024 ruling to conclude that Holdings "is the Appellee, not the Appellant, in this Appeal" (*id*. at 9). But that is the exact issue on appeal. Appellant recognizes this Court's views on the issue, and has appealed that very decision. The Second Circuit may very well agree with this Court's ruling, or it may not. This uncertainty warrants deference to the Second Circuit while it properly exercises its jurisdiction. *See Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.,* 760 F.2d 390, 394 (2d Cir. 1985) ("Where, as here, a jurisdictional statute is invoked under circumstances consistent with Article III judicial power, federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'") (citation omitted).

Accordingly, the Court, as Appellant argued in its merits brief, should defer any adjudication of this motion until the Second Circuit Appeal is resolved.

## CONCLUSION

For the reasons set forth herein, the Court should deny the Motion.

Dated: June 24, 2025
      New York, NY

/s/ *Michael S. Lazaroff*
Michael S. Lazaroff
RIMÔN, P.C.
400 Madison Ave, Suite 11D
New York NY 10017
(646) 738-4151
michael.lazaroff@rimonlaw.com

Anthony C. Acampora
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
anthony.acampora@rimonlaw.com

/s/ *Louis M. Solomon*
Louis M. Solomon
Colin Underwood
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
lsolomon@reedsmith.com
cunderwood@reedsmith.com


*Counsel for Provisional Eletson Holdings Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

This brief complies with the type-volume limit in Rule 8013(f)(3)(A) of the Federal Rules of Bankruptcy Procedure because this brief contains 3,289, excluding the parts of the brief exempted by Rule 8015(g) of the Federal Rules of Bankruptcy Procedure, as counted using the word count of the word-processing system used to prepare the brief.

This brief is submitted in 14-point Times New Roman font and double-spaced under Rule 8013(f) of the Federal Rules of Bankruptcy Procedure.

Dated: June 24, 2025
    New York, NY
                                                   */s/ Louis M. Solomon*

                                                   *Counsel For Provisional Eletson Holdings Inc.*

- 17 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 24, 2025, I caused an electronic copy of the *Appellant's Memorandum Of Law In Opposition To Reorganized Holdings' Motion To Dismiss* to be electronically filed with the United States District Court for the Southern District of New York using the CM/ECF system, which, pursuant to Fed. R. Bankr. P. 8011(c)(2) and (3), will automatically send notification of such filing to counsel of record.

Dated: June 24, 2025
       New York, NY                            */s/ Louis M. Solomon*

                                               *Counsel For Provisional*
                                               *Eletson Holdings Inc.*